United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATHERINE WEINSTOCK and MARION WEINSTOCK, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-CV-04053 |
| TRANSAMERICA INVESTMENT GROUP, INC., BEYOND CONSTELLATION USA, LLC, TIG GP, LLC, EXBURY INVESTMENTS, LLC, JOHN B. BERRY, KELLY M. BARKER, UNCAGED PAWS, INC., BARKWORKS PRODUCTIONS, INC., METROMAGNET COMPANIES, LLC, DWAN AKILI BROWN, and NICK PICCIRILLI, | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Catherine and Marion Weinstock ("Plaintiffs") filed suit against various individuals and affiliated entities ("Defendants") in connection with a series of investment opportunities gone bad. According to Plaintiffs, the investment opportunities—which Defendants promised would yield lucrative returns—turned out to be fraudulent. Plaintiffs now come to the Court alleging deliberate misrepresentations by the Defendants.

Plaintiffs obtained a Clerk's Entry of Default against Kelly M. Barker, Uncaged Paws, Inc., Barkworks Productions, Inc. ("Barkworks"), and Nick Piccirilli. (*See* Dkt. Nos. 17, 22). The remaining Defendants, TransAmerica Investment Group, Inc., Beyond

Constellation USA LLC, TIG GP LLC, Exbury Investments LLC, and John B. Berry (together, the "Berry Defendants"), filed the pending Motion for Summary Judgment. (Dkt. No. 67). For the following reasons, the Court **GRANTS** the Motion.

I.   BACKGROUND[1]

The events leading to this lawsuit began in 2014. At that time, Plaintiff Catherine Weinstock and Defendant Kelly Barker had been friends for nearly a decade. (Dkt. No. 1 at 8). In June 2014, Barker approached Plaintiffs, Catherine and Marion, and introduced them to Dwan Akili Brown. (*Id.*). Together, Barker and Brown solicited Plaintiffs to participate in an investment opportunity involving themselves, John B. Berry, and TransAmerica Investment Group, Inc. ("TransAmerica").[2] (*Id.*). The parties entered into an agreement in 2014 (the "2014 Agreement"), under which Plaintiffs paid $25,000 to TransAmerica. (*Id.* at 9). According to Plaintiffs, the parties understanding was that Plaintiffs would be paid $2.1 million fourteen days following contract execution, but if the deal did not materialize, TransAmerica would return Plaintiffs' $25,000. (*Id.* at 9–10). Later, in November 2014, Barker and Brown informed Plaintiffs that the deal did not materialize, but that Berry was working on other deals to pay Plaintiffs their expected return of $2.1 million. (*Id.* at 10). TransAmerica did not attempt to return the $25,000. (*Id.* at 10–11).

---

[1] Except where noted, this Section contains only undisputed facts, which have been construed in the favor of the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

[2] Plaintiffs allege TransAmerica was a sham alter ego that Berry fully controlled and used to avoid liability. (*See* Dkt. No. 1 at 42–46).

2

The 2014 Agreement was the first of many similar contracts that left Plaintiffs empty-handed. Barker and Brown convinced Plaintiffs to enter into two personal loans and three additional "investment opportunities." These are briefly outlined as follows, starting with the personal loans and then the investments:

- In April 2015, Barker and Brown approached Catherine Weinstock asking for short-term personal loans (the "Personal Loans Agreement"). (*Id.* at 11). Barker supposedly needed money for rent and utilities, while Brown needed it for child support obligations. (*Id.*). Catherine sent Brown $600 through Chase Bank and Barker $5,400 through PayPal. (*Id.*). Per Barker's request, Catherine sent the money to Barker's deceased brother and her non-profit, Uncaged, because the indirect payments were necessary to avoid garnishment from the IRS. (*Id.*). Barker and Brown agreed to pay Catherine back in two weeks. (*Id.*). The loans were never repaid. (*Id.*).

- Around the same time as the Personal Loans Agreement, Barker and Brown approached Plaintiffs with a different investment opportunity involving Barker, Metromagnet Companies, LLC, Berry, and TransAmerica. (*Id.* at 12). This time, Barker promised $1.5 million in return for a $35,000 investment (the "2015 Agreement"). (*Id.*). Barker and Brown suggested that entering into the 2015 Agreement was necessary to repay the 2014 Agreement and Personal Loans Agreement. (*Id.*). According to Plaintiffs, Berry told them that HSBC Bank would issue a $100 million letter of credit, but if Berry failed to secure a letter of credit or the subject transaction was otherwise not completed, Berry and TransAmerica would return Plaintiffs investments under both the 2014 and 2015 Agreements—a $60,000 total. (*Id.* at 12–13). Based on these representations, Catherine Weinstock remitted payment to TransAmerica in late April 2015. (*Id.* at 13). Ultimately, Berry did not secure the letter of credit and did not return either of Plaintiffs' investments.[3] (*Id.*).

- In May 2018, Barker again approached Catherine Weinstock with another opportunity involving Barker, Barkworks, and Entercore, Inc., a Montana corporation. (*Id.* at 15). Under this deal, she would provide $87,500, receive that amount back approximately one week later, and receive an additional

---

[3] After the 2015 Agreement did not materialize, Plaintiffs threatened Berry with legal action. (Dkt. No. 1 at 14). In October 2015, Plaintiffs agreed not to pursue those claims because Barker and Piccirilli convinced Plaintiffs that Berry and TransAmerica were closing on a deal, that would be used to repay them. In December 2015, Barker informed Plaintiffs the repayment deal fell through. (*Id.* at 15).

3

- $3 million within 30 international banking days (the "2018 Agreement"). (*Id.* at 16). Again, Barker suggested this agreement was necessary for Plaintiffs to be made whole for all previous agreements. (*Id.*). Just like the previous instances, Catherine Weinstock remitted payment. (*Id.* at 16). And, just like the previous instances, Plaintiffs received neither the $87,500 nor the $3 million. (*Id.*).

- In October 2019, Barker, Brown, and Piccirilli solicited Catherine Weinstock to participate in an agreement involving Barker, Barkworks, Berry, TransAmerica, Brown, and Piccirilli. (*Id.* at 16–17). Under this agreement, Catherine would send $25,000 in exchange for a return of $250,000 plus an additional $125,000 reconciliation payment for the other, now-fallen-through deal (the "2019 Agreement") by November 4, 2019. (*Id.* at 18–20). Like the previous agreements, they suggested that the 2019 Agreement was necessary for Plaintiffs to be made whole for all previous agreements. (*Id.* at 19). Again, Catherine Weinstock remitted payment. (*Id.* at 20). And again, Berry, Brown, and Piccirilli did not pay the agreed-upon amounts, and Plaintiffs have not received any money to date under the 2019 Agreement. (*Id.* at 21).

Plaintiffs assert that throughout these series of agreements, Catherine considered Barker a close friend and had no suspicions that Barker knowingly made false representations until coming across two newspaper articles. (*Id.*). Those articles detailed how Barker default judgment had a default judgment entered her "with facts nearly identical" to Plaintiffs' own dealings with her, and this made Catherine question Barker's legitimacy. (*Id.* at 22). Plaintiffs claim that through a series of events, Catherine connected with one of Barker's victims listed in the newspaper articles—Kathleen Tarochione. (*Id.* at 22–24). When the two of them met and compared their experiences, they realized the extent of the scheme in which Barker and the other Defendants had been engaging. (*Id.*).

Plaintiffs brought suit against the Defendants alleging (1) breach of contract, (2) negligent misrepresentation, (3) common law fraud, (4) violation of Section 10(b) of

4

the Securities Exchange Act of 1934 and SEC Rule 10b-5 (the "Securities Act Claim"), (5) violation of the Texas Deceptive Trade Practices Act, and (6) a joint venture and piercing of the corporate veil. The Berry Defendants moved to dismiss all claims in March 2022. (*See* Dkt. No. 9). Judge Lynn Hughes, then presiding, denied dismissal as to all claims except for the Securities Act Claim. (*See* Dkt. No. 23 at 2–3). The Berry Defendants moved for summary judgment on the remaining claims. (Dkt. No. 67). Soon after, the case was reassigned to the undersigned. (Dkt. No. 68). With briefing complete, the Motion is ripe for review.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under governing law. *E.g.*, *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). And, a "fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson b. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537

5

F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

If the movant meets this burden, the nonmovant must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up). If evidence is merely colorable or not significantly probative summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019).

In reviewing a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### III. DISCUSSION

Plaintiffs assert five claims: (1) breach of contract claims against Berry and TransAmerica under the 2014 Agreement, 2015 Agreement, and 2019 Agreement;

6

(2) negligent misrepresentation against Berry; (3) common law fraud against Berry; (4) violations of the Texas Deceptive Trade Practices Act ("DTPA") against all the Berry Defendants; and (5) joint venture and piercing of the corporate veil against all the Berry Defendants. (Dkt. No. 1 at 24–46). The Defendants move for summary judgment on each. (Dkt. No. 67 at 6–13).

### A. BREACH OF CONTRACT

The Berry Defendants make two main arguments for why they are entitled to summary judgment on Plaintiffs' breach of contract claims. First, the Berry Defendants argue that there is only one operative agreement between the parties—the 2015 Agreement—and they did not breach that contract. (Dkt. No. 67 at 7–9). Second, they argue that the breach of contract claims based on the 2014 and 2015 Agreements are barred by the statute of limitations. (*Id.* at 9–10).

#### 1. Statute of Limitations—The 2014 and 2015 Agreements

In Texas, a breach of contract claim must be brought "no later than four years after the day the claim accrues." Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). "Under Texas law, the question of when a cause of action accrues is a matter of law for the court to decide[.]" *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566–67 (Tex. 2001)). For breach of contract claims, accrual generally begins "when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach." *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.).

In this case, Plaintiffs claim they entered into the 2014 Agreement on September 24, 2014, and TransAmerica did not perform when it was due on October 8, 2014. (Dkt. No. 1 at 9–10). Similarly, Plaintiffs claim they entered into the 2015 Agreement in April 2015, and Berry and TransAmerica did not perform when it was due on May 14, 2015. (*Id.* at 12–13). The breaches, therefore, occurred on those dates. And nothing indicates that Plaintiffs had insufficient notice at the time. *See Middaugh v. InterBank*, 528 F.Supp.3d 509, 539 (N.D. Tex. 2021) (finding sufficient notice beginning when there was a clear breach of the contractual terms). Accordingly, with respect to the 2014 and 2015 Agreements, limitations expired on October 9, 2018, and May 15, 2019, respectively, the day after performance was due. Plaintiffs filed this action on December 13, 2021. (*See* Dkt. No. 1 at 1). Therefore, to the extent Plaintiffs seek recovery for breach of contract with respect to the 2014 and 2015 Agreements, those claims are barred by the statute of limitations.

In response, Plaintiffs raise several arguments—(1) fraudulent concealment, (2) equitable estoppel, and (3) revival by acknowledgment. (Dkt. No. 72 at 8–12). As explained below, each of these arguments fall short.

      a. <u>Fraudulent Concealment</u>

To successfully assert fraudulent concealment, a party must allege that the defendant: (1) actually knew a wrong occurred; (2) had a fixed purpose to conceal the wrong; and (3) concealed the wrong. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). Even assuming that there is a genuine issue of material fact as to the first two elements,

8

there is not one as to the third. That is, there is no genuine material dispute that the Berry Defendants concealed the wrong.

For both the 2014 and 2015 Agreements, immediately following TransAmerica's non-performance, Plaintiffs attempted to contact Berry to discuss the issue. (Dkt. No. 1 at 10, 13–14). Moreover, on September 17, 2015, Plaintiffs "demanded that Mr. Berry return Plaintiffs' $60,000 back to them, or else face civil and potential criminal liability." (*Id.* at 14). Clearly, Plaintiffs were on notice of the alleged wrongdoing in this suit yet elected not to seek judicial relief, and they have offered no evidence otherwise. This case, then, is not an instance of when the defendant "deceitfully conceal[ed] wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

      b.  <u>Equitable Estoppel</u>

The equitable estoppel doctrine may bar a limitations defense when a party makes representations that induce a plaintiff to delay filing suit until the limitations period has run. *Vaughn v. Sturm-Hughes*, 937 S.W.2d 106, 108 (Tex. App.—Fort Worth 1996, writ denied). Under Texas law, equitable estoppel requires: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

Here, Plaintiffs argue that equitable estoppel applies because whenever they attempted to assert their rights, the Defendants presented them with either fake

9

settlement agreements or additional investments that purported to roll the amount owed into a subsequent deal. (Dkt. No. 72 at 10–11). Both points are unavailing.

First, regarding the "fake" settlement, there is no genuine dispute as to the authenticity of the settlement agreement involving Plaintiffs, Berry, and TransAmerica. Not only do Plaintiffs offer no evidence calling into question the authenticity of the settlement agreement, but Plaintiffs' pleadings indicate that they believed the settlement was fake only because Barker and Piccirilli managed to talk Catherine Weinstock out of enforcing it at the last minute. (Dkt. No. 1 at 14).

Second, regarding the future investments that would pay back the amounts already owed, misrepresentations in the estoppel context "cannot be grounded on a promise to do something in the future." *Stanley v. CitiFinancial Mortg. Co., Inc.*, 121 S.W.3d 811, 820 (Tex. App.—Beaumont 2003, pet. denied). To the extent Plaintiffs argue that they refrained from bringing suit because they were enticed by future deals that purportedly would remedy their losses, they have not offered any evidence that there have been "any false statements of *present* facts." *DDMS Techs. v. Anacomp, Inc.*, No. 4:06-CV-00070, 2006 WL 3099632, at *7 (S.D. Tex. Oct. 30, 2006) (emphasis in original). Moreover, "unsuccessful remedial efforts alone cannot toll limitations." *Beltway Park Baptist Church, Inc. v. Bolton*, No. 11-18-00049-CV, 2020 WL 868069, at *5 (Tex. App.—Eastland Feb. 21, 2020, no pet.) (citing *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 95–96 (Tex. 2004)). The doctrine of equitable estoppel is therefore inapplicable.

c. <u>Revival By Acknowledgment</u>

Under Texas law, dismissal due to limitations for a claim "may be avoided" when there is either an express promise to pay a debt or a written acknowledgement of the justness of the claim. *In re Vineyard Bay Dev. Co., Inc.*, 132 F.3d 269, 271 (5th Cir. 1998). Such an acknowledgment "operates as a new obligation rather than merely as a revival of the prior debt." *Id.* The acknowledgment must be in writing and signed by the party to be charged. Tex. Civ. Prac. & Rem. Code § 16.065.

Plaintiffs argue for revival by acknowledgment but offer no substance. (*See* Dkt. No. 72 at 11–12). Beyond reciting general legal principles regarding acknowledgments, Plaintiffs' only evidence is that "Ex. 1–8 of the Complaint supports . . . Plaintiffs' assertions in the Complaint that each payment was subsequently acknowledged[.]" (*Id.* at 12). They argue that limitations should therefore be tolled to beginning no earlier than October 4, 2019. (*Id.*). However, upon review, nothing in that contract refers to any former debts or obligations owed to Plaintiffs in connection with any former agreements. (*See* Dkt. No. 1–2 at 50–53). Because Plaintiffs' breach of contract claims are barred by the statute of limitations with respect to the 2014 and 2015 Agreements, *see supra* Section III.A.1, and no exception applies, Berry and TransAmerica are entitled to summary judgment on these contracts.

**2. The 2019 Agreement**

Plaintiffs' breach of contract claims based on the 2014 and 2015 Agreements are barred by limitations. But the same cannot be said for the claim based on the 2019 Agreement, which is undisputedly not time-barred. Instead, Berry and TransAmerica

11

argue the 2019-Agreement-based breach of contract claim should be dismissed for lack of privity. (Dkt. No. 67 at 9). The Court agrees.

To assert a claim for breach of contract, a party must demonstrate that it has standing, either by proving that it is "in privity of contract with the defendant or that it is a third-party beneficiary entitled to enforce the contract." *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.). A plaintiff establishes privity by proving that the "defendant was a party to an enforceable contract with either the plaintiff, or a third party who assigned its cause of action to the plaintiff." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 210 (Tex. App.—El Paso 2010, pet. denied). Third-party-beneficiary status may be established by "demonstrating that the contracting parties intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (cleaned up). In this inquiry, "courts must look solely to the contract's language, construed as a whole." *Id.* (citing *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 53 (Tex. 1964)). Courts may not presume intent, and in fact courts begin with the presumption that the parties contracted solely for themselves. *Id.* at 103. "The contract must include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to do so is insufficient." *Id.* (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

The Berry Defendants argue that TransAmerica "had no communications with the Weinstocks" since 2015. (Dkt. No. 67 at 8–9). By Plaintiffs' own pleadings, "[t]he contract is contained in the 'Private Loan' and 'Commitment for Secured Credit Facility'

documents that are incorporated by reference as Exhibits 7 and 8." (Dkt. No. 1 at 27). Upon review, the Private Loan (Exhibit 7) is a contract between Barker, Brown, and Piccirilli, the borrowers, and Catherine Weinstock, as the investor. (Dkt. No. 1–2 at 46). It is, in substance, an agreement wherein Catherine Weinstock agrees to lend $25,000 to Barker, Brown, and Piccirilli, in exchange for $250,000 to be paid in 30 calendar days. (*Id.*). There are only two references to TransAmerica and Berry in it. The first is in subpart B, which states: "To evidence the approval, Transamerica Investment has provided to Barkworks (Kelly M. Barker) the Draft Mortgage Note which will be fully executed upon receipt of the $25,000[.]" (*Id.*). And the second is "Remittance Instructions[,]" where the Beneficiary Name lists TransAmerica. (*Id.* at 48). Under these facts, Plaintiffs lack privity with TransAmerica and therefore cannot properly assert the breach of contract claim based on the 2019 Agreement. *See Pagosa Oil & Gas*, 323 S.W.3d at 210. And while third-party beneficiaries may enjoy standing to bring suit in some cases, in this case it is a party to the contract—Plaintiffs—who are bringing suit, not TransAmerica as the beneficiary. Third-party standing is therefore inapplicable.

The Court now turns to Exhibit 8, the "Commitment for Secured Credit Facility" agreement. This is a lending agreement between Barker and Barkworks, the borrowers, and TransAmerica, the lender. (*See* Dkt. No. 1-2). As with the Private Loan, Plaintiffs cannot demonstrate standing. While TransAmerica was a party to the contract, the contract was with neither Plaintiffs nor a third party who assigned its cause of action to Plaintiffs. *See Pagosa Oil & Gas*, 323 S.W.3d at 210. To have standing as a third-party assignee, Barker and Barkworks must have assigned their causes of action to Plaintiffs,

13

which didn't happen here. Likewise, the contract makes no mention of Plaintiffs at all, much less demonstrate "a clear and unequivocal expression of the contracting parties' intent" to directly benefit them. *Brumitt*, 519 S.W.3d at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

Because Plaintiffs have not provided evidence showing that they have standing to allege breach of the 2019 Agreement, Berry and TransAmerica are entitled to summary judgment on that claim.

### B. NEGLIGENT MISREPRESENTATION

Plaintiffs next allege that Berry is liable for negligent misrepresentation because Berry communicated various falsehoods to them to induce them to enter into the 2014, 2015, and 2019 Agreements.[4] (Dkt. No. 1 at 29–30). These alleged misrepresentations include, for example, representing that Plaintiffs would receive returns on their investment, that Berry would perform his own obligations under the agreements, and that Berry had satisfied all conditions precedent. (*Id.*). For the reasons stated below, the claim is time-barred.

The statute of limitations for a negligent misrepresentation cause of action under Texas law is two years. *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 217 (Tex. App.—Dallas 2013, no pet.). "As a general rule, a cause of action accrues and the statute

---

[4] In the alternative, Plaintiff's also base an intentional misrepresentation claim on the same set of facts. However, that claim is redundant with their fraud claim, which the Court will address later. *See Fath v. CSFB 1999-C1 Rockhaven Place Ltd. P'ship*, 303 S.W.3d 1, 5 n.4 (Tex. App.—Dallas 2009, pet. denied) ("A claim of intentional misrepresentation has the same elements as a fraud claim . . . Accordingly, our discussion of fraud includes intentional misrepresentation.").

14

of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Here, Plaintiffs' allegations as to how Berry misled them came into existence, and were within Plaintiffs' knowledge, when the Defendants failed to perform. Performance was due on the on the 2014 and 2015 Agreements on October 8, 2014, and May 14, 2015, respectively. *See supra* Section III.A.1. Performance was due on the 2019 Agreement on November 3, 2019. (Dkt. No. 1-2 at 46). Plaintiffs were required to bring suit on these claims within two years. They did not bring suit until December 13, 2021. (Dkt. No. 1). Therefore, these claims are time-barred.

Plaintiffs have not offered evidence that creates a genuine factual dispute as to that date. Their negligent misrepresentation claim is thus barred by the statute of limitations, and their arguments regarding tolling the statute of limitations are unavailing for the same reasons as explained in the breach of contract analysis. *See supra* Section III(A)(I). Accordingly, the Berry Defendants are entitled to summary judgment on this claim.

### C. COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION

Plaintiffs assert that Berry is liable for common law fraud and intentional misrepresentation based on the same facts as alleged in support of their negligent misrepresentation claim. (Dkt. No. 1 at 29–30).

"A claim of intentional misrepresentation has the same elements as a fraud claim[,]" so the Court's discussion of fraud includes intentional misrepresentation. *Fath v. CSFB 1999-C1 Rockhaven Place Ltd. P'ship*, 303 S.W.3d 1, 5 n.4 (Tex. App.—Dallas 2009, pet. denied). In Texas, the statute of limitations for fraud claims is four years. *Anderson*

15

*v. Cocheu*, 176 S.W.3d 685, 689 (Tex. App.—Dallas 2005, pet. denied). As a result, the fraud claim is time-barred with respect to the 2014 and 2015 Agreements. The 2019 Agreement, however, is not.

"The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party 'actually and justifiably relied upon,' causing him injury." *Garcia v. Vera*, 342 S.W.3d 721, 725 (Tex. App.—El Paso 2011, no pet.) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Berry argues that he is entitled to summary judgment because the evidence shows that he and TransAmerica "had no communications with the Weinstocks" since 2015, and the 2019 Agreement "provided no obligation for Berry or [TransAmerica] to do anything as it pertains the Weinstocks." (Dkt. No. 67 at 8). The Court agrees.

As remarked by Judge Hughes prior to reassignment, "[t]he Weinstocks have not pleaded that Berry made a misstatement related to the 2019 agreement, just Barker, Brown, and Piccirilli." (Dkt. No. 23 at 3). Plaintiffs have offered no evidence that Berry or TransAmerica was a party to the Private Loan, and Plaintiffs' own pleadings, including the lending agreement, "Commitment for Secured Credit Facility," did not reference Plaintiffs at all. (*See* Dkt. No. 1-2 at 46–48, 50–53). Despite whatever extent Berry and TransAmerica might have been connected to or involved with the 2019 Agreement, there is no evidence in the record that Berry made any false representations to Plaintiffs. In his affidavit, Berry testified that he last communicated with Plaintiffs in 2015. (*See* Dkt. No. 67-1). And by Plaintiffs' own account, Barker, Brown, and Piccirilli were the ones making

16

representations and soliciting them. (*See* Dkt. No. 1 at 16–21). Any representations made by other people about Berry's actions or plan of actions do not amount to Berry making a materially false statement.

Summary judgment is proper when the party opposing the motion fails to establish an essential element of its case. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552. Because Berry testified that he made no statements to Plaintiffs with respect to the 2019 Agreement, and Plaintiffs have not offered any evidence to the contrary, Berry is entitled to summary judgment on Plaintiffs' fraud claim.

### D. DTPA VIOLATIONS

Plaintiffs assert violations of the DTPA against all Defendants, including the Berry Defendants. (Dkt. No. 1 at 40–41). The Berry Defendants claim that they are entitled to summary judgment because this claim, like Plaintiffs' negligent representation claim, is barred by the statute of limitations. (Dkt. No. 67 at 11).

The statute of limitations for DTPA claims is two years. Tex. Bus. & Com. Code Ann. § 17.565; *see also Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (recognizing a two-year limitations period for DTPA claims). Here, Plaintiffs' DTPA claim is based on the same set of facts as their negligent representation claim. (*See* Dkt. No. 1 at 41). Namely, they assert that the Berry Defendants misrepresented the Agreements, misrepresented the guarantees and warranties, and withheld material information, with an intent to induce Plaintiffs into entering the Agreements. (*Id.*).

The 2019 Agreement is the latest transaction Plaintiffs could be referring to as the basis for their DTPA claim. And as with the negligent misrepresentation claim,

limitations began to accrue on November 4, 2019, the date after performance was due. (*See id.* at 17). Plaintiffs' DTPA claim is therefore barred by the statute of limitations for the same reasons as their negligent misrepresentation claim.[5] Their arguments regarding tolling the statute of limitations, as with the negligent misrepresentation claim, are unavailing for the same reasons as explained there. *See supra* Section III(A)(1). Accordingly, the Berry Defendants are entitled to summary judgment on this claim.

### E. JOINT VENTURE AND PIERCING OF THE CORPORATE VEIL

Plaintiffs also bring claims alleging that the Berry Defendants were operating a joint venture and that the corporate veil should be pierced. However, neither of these are independent causes of action; rather, they are theories for imposing liability.[6] Here, Plaintiffs cannot assert joint venture or corporate-veil-piercing because Plaintiffs claims are either time-barred or without merit for the reasons stated above. Accordingly, to extent these can be labeled as "claims," the Berry Defendants are entitled to judgment as a matter of law.

---

[5] The same is true for the claim if premised on the 2014 and 2015 Agreements. *See supra* Section III.C.

[6] A purported joint venture claim is not a cause of action but is rather a theory for imposing joint and several liability. *See, e.g.*, *Fredericksen v. Halliburton Co.*, No. 4:10-CV-01892, 2011 WL 1232991, at *5 (S.D. Tex. Mar. 31, 2011) (collecting cases). Likewise, veil-piercing is a theory for imposing liability. *See, e.g., Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.–Houston [14th Dist.] 2014, no pet.) (stating piercing the corporate veil or alter ego, is merely a theory of imposing liability); *Wilson v. Davis*, 305 S.W.3d 57, 68 (Tex. App.–Houston [1st Dist.] 2009, no pet.). The claims cannot survive without a meritorious underlying cause of action. *Watkins v. Basurto*, 2011 WL 1414135, at *8 (Tex. App.—Houston [14th Dist.] Apr. 14, 2011, no pet.).

## IV.   CONCLUSION

In sum, the Court **GRANTS** the Berry Defendants' Motion for Summary Judgment. (Dkt. No. 67). All claims against the Berry Defendants—specifically, TransAmerica Investment Group, Inc., Beyond Constellation USA LLC, TIG GP LLC, Exbury Investments LLC, and John B. Berry—are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against the remaining Defendants Metromagnet Companies, LLC and Dwan Akili Brown remain.

It is SO ORDERED.

Signed on March 31, 2024.

*Drew B. Tipton*
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**